**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

|  |  |  |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **MILLENNIUM MULTIPLE EMPLOYER** | ) | **Chapter 11** |
| **WELFARE BENEFIT PLAN,** | ) | **(W.D. Okla. Bankruptcy--** |
| | ) | **Case No. 10-13528)** |
| **Debtor,** | ) | |
| | ) | |
| ------------------------------------------------------------- | ) | |
| **GARY A. PASSONS, M.D.,** *et al.* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:10-00575** |
| | ) | **Judge Campbell** |
| **AVIVA LIFE AND ANNUITY** | ) | |
| **COMPANY, f/k/a INDIANAPOLIS** | ) | |
| **LIFE INSURANCE COMPANY,** *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM</u>

Pending before the Court are Plaintiffs' Motion to Remand and Abstain (Docket Entry No.

139), Motion to Sever Claims Against the Millennium Multiple Employer Welfare Benefit Plan

("Millennium" or "the Plan") (Docket No. 141), and Motion for Voluntary Dismissal (Docket No.

164). Also pending is Defendant Aviva Life and Annuity Company's ("Aviva's") Motion to Transfer

Venue of Removed Case to Court Administering Debtor's Chapter 11 Bankruptcy Case (Docket No.

136), in which Defendants Scott A. Ridge, Ridge Insurance, Inc., David Cline, David H. Cline, Inc.,

Republic Bank and Trust ("Republic"), SecurePlan Administrators, LLC ("SecurePlan"), and

American General Life Insurance Company ("AGL") have joined (Docket Nos. 143, 144, 148 &

149). The Motions have been exhaustively briefed by the parties (Docket Nos. 137, 140, 142, 146,

150-152, 157-159, 161, 164, 165 & 166-1 ). The Court denies Plaintiffs' Motions to Remand/Abstain and to Sever; declines to rule on Plaintiffs' Motion for Voluntary Dismissal; and grants Aviva's Motion to Transfer and transfers this case to the Western District of Oklahoma for the purpose of referring the matter to the Bankruptcy Court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is a multi-party, multi-claim action originally filed on January 4, 2010, in the Chancery Court for Davidson County, Tennessee. There are twenty-five Plaintiffs consisting of doctors and dentists and their respective practices, mostly from Tennessee. One of the Defendants is Millennium which provides employees of contributing employers with medical, disability, long term care, severance and death benefits.

The Millennium Plan was purportedly established as a "10 or more" employer plan within the meaning of the Internal Revenue Code. Participation in the Plan is funded through the purchase of life insurance policies by employers on the lives of participants for whom the contributions are made. The purchased life insurance policies are titled in the name of Republic, the Plan trustee. Those policies are the primary assets of Millennium, and it contends that it has full rights to ownership of the policies for the benefit of all Plan participants.

The core of Plaintiffs' lawsuit is that the Millennium Plan is really a ruse into which Plaintiffs were fraudulently induced to invest. Plaintiffs claim they were falsely told that they could make tax-deductible contributions to the Plan and could later withdraw those sums. However, the Plan purportedly did not comply with federal tax regulations and, instead of acting as a true employee welfare benefit plan, the Plan actually used all of Plaintiffs' contributions to buy life insurance policies. Plaintiffs allege they have not been provided the benefits promised under the Plan for the

contributions they made to the Plan. In addition, many of the Plaintiffs allegedly have been audited by the Internal Revenue Service ("IRS") and assessed substantial interest and penalties for the contributions they made to the Plan.

Named as Defendants in addition to Millennium are the individual insurance agents who sold Plaintiffs memberships in the Plan; the insurance companies who helped create the Plan and issued the life insurance policies to fund it; the Plan's trustee and third-party administrator; accountants; and attorneys who issued opinion letters verifying the legal validity of the Plan. In their Second Amended Complaint in the Chancery Court, Plaintiffs set forth eight state law causes of action against the Defendants, including fraud and fraudulent inducement; negligent misrepresentation; civil conspiracy; fraudulent insurance acts; violations of the Tennessee Consumer Protection Act; negligence; professional negligence; and breach of fiduciary duty. They seek compensatory, punitive, and treble damages, pre- and post-judgment interest, attorney's fees, and costs.

This is not the first time that the legality of the Plan and/or the method used to solicit its investors has been challenged. Lawsuits have been filed in a number of jurisdictions including, but not limited to, two in state district court in Dallas, Westfall v. Bevan and Young v. Millennium Multiple Employer Welfare Benefit Plan; one in the Chancery Court for Madison County, Tennessee, White v. Aviva Life and Annuity Company; and two in Oklahoma state court, Khetpal v. Aviva Life and Hassoun v. Aviva Life.

Faced with a myriad of claims in a multitude of jurisdictions, Aviva filed two interpleader actions in the Western District of Oklahoma: Aviva Life v. Republic Bank, No. 09-cv-113-F and Aviva Life v. Republic Bank, 09-cv-1023-F. In those actions, Aviva sought to address its potential

exposure to inconsistent liability *vis-a-vis* the claims of various Plan participants, versus the ownership claims of the Plan to millions of dollars of life insurance policies issued by Aviva. Defendants included the Plan trustees, Republic, and certain participants in the Plan whose lives, as individuals, were and/or are insured under life insurance policies issued to the Plan by Aviva. Millennium was added as a third-party defendant by Republic in the interpleader actions. Millennium filed a counterclaim against Aviva in the first interpleader, while in the second interpleader, Republic filed a counterclaim against Aviva.

Another interpleader was filed in the same federal district court by AGL and United States Life Insurance Company. That case, styled American General Life Ins. Co. v. Republic Bank & Trust, 09-cv-01243-F, involves other insurers who issued life insurance policies used to fund the Millennium Plan and are co-defendants with Aviva in some of the pending lawsuits (including this one), as well as defendants in other suits brought by Plan participants. Like Aviva, these insurers face inconsistent demands from the Plan participants and the Plan trustees, exposing them to the potential of dual and inconsistent liabilities. In this interpleader action, a counterclaim has been filed, as well as a third-party complaint against Millennium.

With numerous lawsuits pending, Millennium filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Western District of Oklahoma on June 9, 2010.[1] Immediately thereafter, Millennium removed the instant action to this Court.

Millennium also removed the other pending state court cases to federal court and filed motions in each to transfer the case to the Western District of Oklahoma. Three cases involving

---

[1] Millennium's filing did not stop the wave of lawsuits, including several post-petition cases which were filed in state court and removed to federal court: Vartivarian v. Wilson, No. 10-03586 (S.D. Tex. Bankr.); In re Williamson, Bankr. No. 10-0-3367 (N.D. Tex. Bankr.); Jessen v. American Life, No. 10-00318 (N.D. Tex. Bankr.); and Hamrick v. Aviva Life, No. 10-03336 (N.D. Tex. Bankr.).

almost 100 plaintiffs and raising state law claims similar to those presented here were transferred to the Oklahoma bankruptcy court:  Westfall and Young  with the consent of the parties, and White by order of the District Judge.

Millennium's bankruptcy led to Aviva filing an interpleader action as an adversary proceeding in the bankruptcy court, Aviva Life v. Republic Bank, Adv. No. 10-01153, to address additional claims arising after the petition date.  Named as Defendants are the Plan, Republic, and all remaining insureds on Aviva policies issued to the Plan (i.e. those that are unrelated to the insured listed in the pre-petition interpleaders).

After this action was removed from Chancery Court to this Court, Plaintiffs filed a Motion to Remand (Docket No. 56), and Millennium filed a Motion to Change Venue which was joined in by many Defendants. (Docket No. 7) .  The Court denied both Motions without prejudice because Plaintiffs had filed a Motion to Dismiss the bankruptcy proceedings, and the Bankruptcy Court had scheduled a hearing in relation thereto.

Since that time, Millennium and the Official Committee of Unsecured Creditors (including counsel for Plaintiffs herein) filed a Joint Motion for Approval of Settlement in the Bankruptcy Court.  The proposed settlement had Millennium surrendering the policies insuring the lives of Plan participants, and paying a portion of the cash surrender value to Plan participants with lawsuits pending, including the Plaintiffs herein.  After a hearing, the proposed settlement was rejected by the Bankruptcy Court.

Upon rejection of the proposed settlement, most Plan participants who were plaintiffs in pending cases, including Plaintiffs herein, filed proofs of claims with the Bankruptcy Court.  These proofs of claims seek the return of all Plan contributions, the life and death benefits that were

available under the Plan, and unliquidated damages and attorneys' fees.

On February 17, 2011, Millennium filed its proposed Chapter 11 Plan of Liquidation. That Plan of Liquidation was amended on March 10, 2011, and, as amended, would offer Plan participants either a cash payment based upon their contributions and the net assets of the Plan or the option to purchase the policy insuring their lives. However, that same day, Plan participants filed a Motion to Convert Debtor's Chapter 11 Bankruptcy to Chapter 7.[2]

## II. APPLICATION OF LAW

While the pending motions present different (albeit somewhat overlapping) legal questions, all go to the ultimate issue of which court will hear this litigation – a federal court in Oklahoma, or the Chancery Court in Davidson County. However, prior to turning to the substance of the pending motions, the Court preliminarily must decide the sequence for considering the motions.

"When presented with competing motions to remand a case and to transfer venue, a court is to consider the remand motion first, and then address the motion to transfer venue only if it first denies the motion to remand." Lothian Cassidy LLC v. Ransom, 428 B.R. 555, 558 (E.D.N.Y. 2010) (citation omitted). This is because remand motions raise jurisdictional issues, see McGillis/Eckman Investments-Billings, LLC v. Sportman's Warehouse, Inc., 2010 WL 3123266 at *3 (D. Mont. 2010), although "a court's remand analysis will generally take into consideration the possibility that the case might be transferred for consolidation with a pending bankruptcy proceeding." Lothian Cassidy, 428 B.R. at 558. Thus, the Court will first consider Plaintiffs' Motion to Remand and Abstain, then their Motions to Sever and Voluntarily Dismiss (since the

---

[2]According to the parties, the Motion to Dismiss which prompted this Court to deny without prejudice the initial Motion to Remand and Motion to Change Venue is no longer an issue in the Bankruptcy Court. According to Plaintiffs, they withdrew the Motion to Dismiss, while Aviva asserts that the Motion was effectively "abandoned" by virtue of the attempted settlement with Millennium and the subsequent filing of proofs of claims.

Court must have jurisdiction to decide the same), and finally Aviva's Motion to Change Venue.

## A.  Plaintiffs' Motion to Remand and Abstain

Millennium removed the Chancery Court action to this Court pursuant to 28 U.S.C. ¶ 1452 which, in relevant part, provides that a "party may remove any claim or cause of action in a civil action . . . to the district court for the district where the civil action is pending . . . if such district court has jurisdiction of such claims or cause of action under section 1334 of this title."  28 U.S.C. § 1452(a).  Section 1334(a), in turn, gives district courts "original and exclusive jurisdiction of all cases under title 11," while Section 1334(b) provides that the district court "has original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. §§ 1334(a) & (b).

Even where, as here, jurisdiction is asserted under Section 1334, the Court must consider whether it must abstain under the mandatory abstention provision found in Section 1334(c)(2), or should abstain under the permissive abstention provision of Section 1334(c)(2).  In re Lowenbraun, 453 F.3d 314, 320 (6th Cir. 2006).  Plaintiffs insist that mandatory abstention applies, and, if not, that this Court should abstain and remand the matter to the Chancery Court under 28 U.S.C. § 1452(b).[3]

Turning first to the issue of mandatory abstention, Section 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. 1334(c)(2).  "Thus, for mandatory abstention to apply to a particular proceeding, there

---

[3]Section 1452(b) allows a court to remand a removed action related to a bankruptcy court for equitable reasons.

must be a timely motion by a party to that proceeding, and the proceeding must: (1) be based on a state law claim or cause of action; (2) lack a federal jurisdictional basis absent the bankruptcy; (3) be commenced in a state forum of appropriate jurisdiction; (4) be capable of timely adjudication; and (5) be a non-core proceeding." In re Dow Corning Corp. 113 F.3d 565, 570 (6th Cir. 1997).

Here, three of the foregoing enumerated factors have been met: Plaintiffs' Chancery Court Complaint alleges state causes of action in an appropriate court, and federal jurisdiction was invoked based exclusively upon Millennium's bankruptcy. The only remaining questions are whether this case is a core or "non-core" proceeding, and whether the Chancery Court is capable of promptly adjudicating the case.

Plaintiffs cite XL Sport, Ltd v. Lawler, 49 Fed. Appx. 20 (6th Cir. 2002) for the proposition that core proceedings are claims that are 'directly created by bankruptcy law or that by nature could not exist outside of the bankruptcy context." They go on to argue that because their "their claims against the *non-debtor* arise exclusively under Tennessee state law and have nothing whatsoever to do with the substantive rights provided by title 11," their "claims are non-core claims." (Docket No. 140 at 7) (italics added).

While the Sixth Circuit has indicated that core proceeding are either created by bankruptcy law or must exist within the bankruptcy context, it has also observed that "core proceedings are described in 28 U.S.C. § 157," and that, under that provision, they "include but are not limited to 'matters concerning the administration of the estate.'" In re Lowenbraun, 453 F.3d at 320 (quoting 28 U.S.C. 157(b)(2)(A)).[4] In this regard, the Sixth Circuit in In re Lowenbraun cited Sanders

---

[4]Section 157 also describes core proceedings as encompassing such things as "the allowance or disallowance of claims against the estate"; "determinations as to the dischargeability of particular debts"; and "other proceedings affecting the liquidation of the assets of the state or the adjustment of the assets of the estate." 28 U.S.C. §§ 157(b)(2)(B), (C), (I) & (O)

Confectionary Prods., Inc. v. Heller Finan., Inc., 973 F.2d 474, 482 (6th Cir. 1992) for the proposition that an action is a core proceeding where "a successful action on the [] plaintiffs' part could have affected the outcome of the bankruptcy proceeding," and In re Delorean Motor Co., 155 B.R. 521, 525 (B.A.P. 9th Cir. 2009) for the proposition that a state law claim can be a core proceeding if it is "inextricably bound" to the claims allowance process. In re Lowenbraun, 453 F.3d at 320.

In determining whether this is a core or non-core proceeding, "the court looks at the form and the substance of the proceeding." In re G.A.D., Inc., 340 F.3d 331, 336 (6th Cir. 2003). Further, "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by state law." 28 U.S.C. § 157.

A key (if not the primary) Defendant in the Chancery Court suit is the Millennium Plan. Indeed, in the first numbered paragraph of the Second Amended Complaint[5] titled "Nature of Action," "Plaintiffs complain about misrepresentations made to induce them into investing in . . . the Millennium Plan," a Plan which they later describe as "purporting to be a multiple employer welfare benefit plan[.]" (Docket No. 159-3, Second Amended Complaint ¶ ¶1, 70). The primary assets of the Millennium Plan are the policies, and those policies are central to Plaintiffs' underlying state law claims. Those policies are also at the core of the bankruptcy proceedings and present issues about who is the proper owner and who is entitled to the proceeds of the policies. Clearly this litigation could directly affect the *res* of the bankruptcy estate and, in that regard, is "inextricably bound" to the claims allowance process and could affect the outcome of the bankruptcy proceedings.

---

[5]In what Aviva describes as a "strategic move," Plaintiffs dropped their claims in the original Complaint for constructive trust and injunctive relief. (Docket No. 159 at 5).

Moreover, even if the Court were to sever or dismiss the claims against Millennium as Plaintiffs request, the Millennium Plan (and consequently the policies) would still be a primary player in the Chancery Court lawsuit because Plaintiffs aver that Millennium is "jointly and severally responsible for the actions" of many of the co-Defendants, and that those co-Defendants were acting as "agents" of Millennium, making Millennium "jointly and severally responsible for the action of these [Co-]Defendants and the claims raised herein." (Second Amended Complaint ¶ 161). Additionally, Plaintiffs allege that "[a]ll defendants conspired together to defraud Plaintiffs and are jointly and severally liable for Plaintiffs' damages," id. ¶ 161, and in Count 4 allege a "Civil Conspiracy" in which all Defendants purportedly joined to defraud Plaintiffs which proximately caused the damages suffered by Plaintiffs. (Id. ¶¶ 181-186). The damages Plaintiff seek against Millennium for fraud in inducing contributions to the Plan invite questions about who controls the policies which are the bulk of the estate and also could impact how the estate will be distributed. See Mt. McKinley Ins. Co. v. Corning, Inc., 399 F.3d 436, 448 (2d Cir. 2005) (citation omitted) ("Proceedings can be core by virtue of their nature if . . . the proceedings directly affect a core bankruptcy function").

With regard to whether the Chancery Court is capable of promptly adjudicating the case, AGL argues this factor has not been met because Plaintiffs offer no evidence on the issue. In response, Plaintiffs assert that, at the time of removal, the parties had already begun litigating a Motion to Dismiss. This is sufficient if the matter were decided in the abstract. See XL Sports, 49 Fed. Appx. at 22 (finding Dow's third and fourth factors met where "nothing in the record indicates that the Tennessee courts would not adjudicate the claim in a timely fashion or that the chancery court lacks jurisdiction"). However, the possibility still exists that the matter cannot be timely

adjudicated in the Chancery Court because there is a lingering issue as to who is the beneficial owner of the property – the policies – of the estate.  See In re Ames Dept. Stores, Inc., 319 Fed. Appx. 40, 42 (2nd Cir. 2009) (noting that "timely adjudicated" factor could not be met where claim "depended upon a determination as to ownership of the property of the estate").

Based upon the above, the Court finds that mandatory abstention is unwarranted because the Chancery Court proceeding is a core proceeding affecting the administration of the bankruptcy estate and/or the liquidation of the estate's assets.  Alternatively, even if this conclusion is incorrect in light of Plaintiffs' recent efforts to distance themselves from their claims against Millennium, the Court would not abstain and remand under the permissive abstention provision found in 28 U.S.C. 1334(c)(1).

Under Section 1334(c)(1), a court may abstain from hearing a non-core proceeding "in the interest of justice, or in the interest of comity with State courts or respect for State Law." 28 U.S.C. § 1334(c)(1).  In deciding whether to exercise permissive abstention and remand the case to the state court from which it came, a court considers a non-exclusive list of factors, including: "(1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the bankruptcy court's docket; (10) the likelihood that the

commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of nondebtor parties." In re Natco, Inc., 2009 WL 5101912 at *6 (Bankr. E.D. Tenn. Dec. 17, 2009) (collecting cases).

Consideration of these factors does not weigh in favor of abstention. First, and foremost, the efficient administration of the estate (factor 1) would be hampered if this Court abstains and remands to state court because, as already noted, Plaintiffs' claims involve the policies which are the foundation of the Plan and those policies are the bulk of the estate. Moreover, if the filings in this Court are any indication, abstaining and remanding to state court will undoubtedly lead to litigation over the scope of the automatic stay because AGL and Aviva have taken the position that even the filing of a Proposed Case Management Order in this Court, and the exchange of initial disclosures required by Rule 26, would violate the automatic stay provisions of 11 U.S.C. § 362(a). (See, Docket Nos. 124 & 126).

Second, with regard to factors 2 and 3, while the Chancery Court proceedings present state law claims, those likely will not be the only legal questions before that court. A component of the state court Complaint is the contention that the Plan did not meet the "ten or more employee" provision required by the Internal Revenue Code. Further, Plaintiffs allege a breach of fiduciary duty (albeit not against Millennium) which raises the possibility of arguments involving preemption under the Employee Retirement Income Security Act ("ERISA").[6] Interpretations of the federal tax laws and ERISA often present thorny questions perhaps best presented to jurists who deal with such

---

[6]In fact, Millennium has indicated that, in two recent Orders, the Bankruptcy Court has ruled that "the Millennium Plan's assets and the conduct of its trustee, [Republic], are subject to ERISA's requirements." (Docket No. 157, at 12-13).

issues more often.

Third, with regard to factors 4, 6-8 and 11, the Court has already indicated that the claims in the state court action are inextricably intertwined with the bankruptcy proceedings, and, as will be explained in the next section, the claims against Millennium cannot be easily separated from the claims against the non-debtors. Further, the relatedness of the Chancery Court case to the bankruptcy proceedings is underscored by the fact that if Plaintiffs prevail against some of the Defendants such as Aviva and AGL, those Defendants will undoubtedly return to the Western District of Oklahoma to relitigate the indemnity and contribution claims against Millennium.[7]

On the other side of the ledger, the remaining factors[8] favor, or tend to favor, abstention. Factor 5, dealing with the jurisdictional basis, and factor 12 relating to nondebtor Defendants favors abstention because the only stated basis for removal was Millennium's bankruptcy, and there are numerous nondebtor parties. The possibility of forum shopping (factor 10) may exist to some extent, because, as Plaintiffs point out, Defendants such as AGL and Aviva have been quick to join on the bandwagon to remove the Chancery Court case to federal court and have it transferred to Oklahoma.[9]

Further, factor 11 favors abstention because Plaintiffs have a right to have their claims heard by a jury in the Chancery Court. This is unquestionably an important right. However, to the extent

_____

[7] Plaintiffs concede that if they prevail in the Chancery Court against the Defendant insurance companies, those Defendants "can then pursue th[eir] contribution and indemnity claims in the bankruptcy court." (Docket No. 140 at 10).

[8] The Court does not consider factor 9 to favor or disfavor abstention because the parties have not supplied any information about the bankruptcy court's docket, although that court is quite familiar with the Millennium bankruptcy proceedings, having conducted hearings and issued rulings.

[9] In this regard, the Court notes that the likelihood of forum shopping is lessened to some extent in regard to the interpleader actions insofar as such actions, by statute, "may be filed in the judicial district in which one or more of the claimants resides," 28 U.S.C. § 1397, and Republic is alleged to be an Oklahoma banking corporation with its principal place of business there. (See, Docket No. 140-21 at ¶3).

Plaintiffs can show they have claims against the non-debtor Defendants which are separate and apart from the claims against Millennium, the Bankruptcy Judge can recommend that the Order of reference be withdrawn in accordance with 28 U.S.C. § 157 if, as Plaintiffs' insist, they will not consent to trial by the bankruptcy judge. See Lennar Corp. v. Briarwood Capital LLC, 430 B.R. 253, 266 (Bkrtcy S.D. Fla. 2010) ("There is also a reasonable likelihood that the district court would withdraw the reference pursuant to § 157(d) based upon the Plaintiffs' demand for jury trial and stated non-consent to jury trial in the bankruptcy court"); In re Carriage House Condo. L.P., 415 B.R. 133, 148 (Bankr. E.D. Pa. 2009) (it "is not an uncommon occurrence" for the bankruptcy court to "hear the matter through the pretrial stages, subject to it then being tied by the District Court in front of a jury"). Moreover, Plaintiffs are free to renew their remand request before the Bankruptcy Court which will be in a better position to determine when the claims asserted against the non-debtor Defendants will no longer impact the bankruptcy estate. See Young v. Millennium, Adv. No. 10-13528 (Bankr. N.D. Tex.) and Westfall v. Millennium, Adv. No. 10-03158 (both transferring case to Millennium bankruptcy court without prejudice to Plaintiff's Motions to Remand and Abstain). Simply put, this factor, although important, is not dispositive because, while "the path to a jury trial in or through federal bankruptcy court is more complicated, . . . it is still available[.]" In re Kaiser Group Intern., Inc., 421 B.R. 1, 17 (Bankr. D. Col. 2009).

In arriving at the conclusion that a weighing of the factors does not favor abstention and remand, the Court has considered the three cases relied upon by Plaintiffs in which the courts decided to remand actions to state courts involving the Millennium Plan (or its predecessor the Xelan Plan). All, however, are inapposite.

In Vig v. Indianapolis Life Ins. Co., 336 B.R. 279 (S.D. Miss. 2005), the court decided to

remand a state court action which conceivably involved Xelan's bankruptcy. However, Xelan was not a party to the action, removal was based upon ERISA, it appears that the Xelan Plan itself had not filed for bankruptcy but had actually terminated before suit was filed, and there were no indemnity claims against the debtor. In <u>Vartivarian v. Wilson</u>, Adv. No. 10-3586 (Bankr. W.D. Okla.), "great weight" was given to the fact that a number of the defendants joined in the request to abstain and remand or were indifferent thereto, the debtor took no position on remand, and a "huge factor" was that no debtors were involved in the state court case, and the creditors committee actually wanted the action remanded. (<u>See</u> Docket No. 140-25). Finally, in <u>In re Williamson</u>, Adv. No. 10-3367 (Bankr. N.D. Tex.), no debtors were involved in the state court action. (<u>See</u>, Docket No. 140-26). Here, of course, the Millennium Plan is a key defendant, and it has made clear its position by filing its own opposition to Plaintiffs' Motion to Remand or Abstain. (Docket No. 157).

"Courts must be "sparing" in their exercise of permissive abstention. <u>CCM Pathfinder Pompano Bay, LLC v. Compass Financial</u>, 396 B.R. 602, 607 (S.D.N.Y. 2008). While Plaintiffs present relatively pedestrian state law claims, those claims are directed at the bankrupt and are intimately associated with the policies that lie at the very heart of the Millennium bankruptcy. The Court will not abstain, nor remand the case to the Chancery Court.

**B. <u>Plaintiffs' Motions to Sever and Dismiss Claims</u>**

Rule 21 provides that "[o]n motion, or by its own, the court may at any time, on just terms, add or drop a party," or "sever any claim against a party." Fed. R. Civ. P. 21. Under the rule, the Court may "sever any claim and proceed with it separately if doing so will increase judicial economy and avoid prejudice to the litigants." <u>Otis Clapp & Son, Inc. v. Filmore Vitamin Co.</u>, 754 F.2d 738, 743 (7th Cir. 1985). "[W]here certain claims in an action are properly severed under Fed.

R. Civ. P. 21, two separate actions result; a district court may transfer one action while retaining jurisdiction over the other." <u>Chrysler Credit Corp. v. Country Chrysler, Inc.</u>,928 F.2d 1509, 1519 (10th Cir. 1991) (collecting cases, footnote omitted).

In deciding if claims should be severed pursuant to Rule 21, courts generally consider such factors as "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for separate claims." <u>Baughman v. Lee County</u>, 554 F. Supp. 2d 652, 653 (N.D. Miss. 2008) (collecting cases); <u>see</u> <u>also County of El Paso v. Jones</u>, 2011 WL 996308 at *2 (W.D. Tex. Mar. 11, 2011). Ultimately, the decision to sever or not is committed to the "'sound discretion of the trial court.'" <u>Greystone Comm. Reinvestment Ass'n v. Berean Capital, Inc.</u>, 638 F. Supp. 2d 278, 293 (D. Conn. 2009).

In this case, Plaintiffs do not identify which specific claims should be severed. This may be because the "Millennium Plan" appears throughout the 60-page Second Amended Complaint, and Millennium is a Defendant in five of the eight counts, including the conspiracy claim. In any event, severance is inappropriate.

Unquestionably, Plaintiffs' claims against the nondebtor Defendants and Millennium arise out of the same transactions or occurrences; otherwise Plaintiffs would not have named Millennium as a Defendant. The claims against all Defendant also involve some common questions of law and fact. In this regard, the underlying theme of Plaintiffs' Chancery Court case is that the Defendants all engaged in conduct meant to induce Plaintiffs to participate in the Millennium Plan and that such conduct caused them damages. This factor counsels against severance.

As for the possibility of settlement and judicial economy, Plaintiffs claim they "and Millennium are close to resolving their dispute in the context of the bankruptcy action, separately from the non-debtor defendants who are simply trying to piggy-back" on Millennium's bankruptcy. (Docket No. 142 at 5). They also assert that judicial economy would be served by severing the claims against Millennium; otherwise, they will be forced to litigate in a distance forum.

On the other hand, the non-debtor Defendants argue that judicial economy will only be served if the claims are sent to the Bankruptcy Court because all pending claims could be resolved there, and only in that venue can there be a global settlement of all litigation involving the Millennium Plan. For its part, Millennium has sided with the non-debtor Defendants by opposing severance and indicating the only way all the various claims against it can be resolved is under the supervision of the Bankruptcy Court. Moreover, Millennium asserts that it is close to reaching a settlement with the IRS regarding the tax status of the Plan, a settlement that would preserve the deductibility of employers' contributions and lead to more favorable treatment in regard to audits of deductions taken for contributions to the Plan. Those negotiations are in a delicate stage and could be derailed if Plaintiffs are able to raise questions about the tax compliancy of the Plan in a state court. (Docket Entry No. 157 at 16).

Having considered the different positions, the Court finds that even if it was somehow possible to cleanly sever the claims against Millennium, the possibility of settlement and judicial economy counsels against severance. Given the filings, it seems likely that the only chance for a global settlement and possible resolution of the tax issues is in the bankruptcy proceedings. Further, judicial economy would be served by having all of the claims, cross-claims, and counterclaims directed at the Plan in one venue, and by avoiding the possibility that a state court judge will be

called upon to issue rulings relating to the tax status of the Plan.

Finally, though not specifically addressed by the parties, the last factor also counsels against severance. Because the Millennium Plan is the underlying basis for Plaintiffs' Chancery Court case, and because Millennium is alleged to have conspired with many of the other Defendants, there undoubtedly will be a substantial overlap in the witnesses and documentary evidence relating to Plaintiffs' claims, even if the claims against Millennium could somehow be severed.

After the parties briefed the Motions to Remand/Abstain, to Sever, and to Change Venue, Plaintiff filed a Motion to Voluntarily Dismiss (without prejudice) their conspiracy claim and their claims against Millennium, presumably in an effort to reduce the problems associated with having Millennium as a named Defendant in this case. That filing was made pursuant to Rule 41(a)(2) which allows a court to dismiss an action or claim "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The decision of whether to grant such a motion (and on what terms) rests in the sound discretion of the court. See Bridgeport Music, Inv. v. Universal-MCA Publ'g, Inc., 583 F.3d 948, 953 (6th Cir. 2009).

In this case, the Court declines to exercise its discretion and will not rule on Plaintiff's Motion for Voluntary Dismissal. As has already been made abundantly clear, the allegations against Millennium are a constant and underlying theme in Plaintiffs' Complaint, such that it is unclear whether dismissal of the conspiracy claim and the claims against Millennium will, in fact, not affect the bankruptcy estate. Moreover, because Plaintiffs have filed proofs of claim in the bankruptcy court, their claims relating to Millennium are going to be adjudicated in the bankruptcy proceedings in any event. Finally, it is not clear that Millennium would not remain a party in the Chancery Court case even were this Court to dismiss Plaintiffs' claims against it since, according to Millennium

(Docket No. 625 at 2, n.1), Aviva filed a Motion for Leave to File an Amended Answer in the Chancery Court which asserts cross-claims against Millennium and its trustee, Republic.

## C. **Aviva' Motion to Change Venue**

In moving to transfer this case to the Western District of Oklahoma, Defendants rely upon 28 U.S.C. § 1412 which provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Plaintiffs insists that the Court should look to 28 U.S.C. § 1404(a) which provides "[f]or the convenience of parties and the witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

There is authority supporting each position, see City of Liberal v. Trailmobile Corp., 316 B.R. 358, 362 (Bankr. D. Kan. 2004) (collecting cases), and, "[i]nterestingly, courts have reached different conclusions as to which interpretation constitutes the majority view." Id. While the Sixth Circuit has not addressed the matter, Judge Wiseman of this Court recently ruled that Section 1412 applies where an action is "at least 'related to'" an underlying bankruptcy proceeding. Mello v. Hare, Wynn, Newell & Newton, LLP, 2010 WL 2253535 at *4 (M.D. Tenn. 2010). This case is clearly related to a bankruptcy proceeding and, therefore, the Court will consider the transfer question under Section 1412.[10]

Any number of factors may be considered in determining whether a transfer under Section

_____

[10]In doing so, the Court notes that it would reach the same result even under Section 1404(a). The key differences between the two statutes is: (1) in Section 1412 "the interest of justice" and "convenience of parties" are in the disjunctive and only one need be met; (2) the interest of the bankruptcy estate is the primary concern under Section 1412, whereas Section 1404's concern is with the other litigants' interests; and (3) there is a strong presumption that proper venue for a case related to a bankruptcy proceeding is the district in which that proceeding is pending. Id. Even though Plaintiffs' forum choice is generally given great weight in the context of a Section 1404(a) analysis, it is not dispositive and may be outweighed by considerations related to convenience and the interest of justice.

1412 is appropriate, but the "[f]actors that have been afforded particular emphasis in the context of adversary proceedings in bankruptcy are: (1) the economic administration of the bankruptcy estate; (2) the presumption in favor of trying cases 'related to' a bankruptcy case in the court in which the bankruptcy is pending; (3) judicial efficiency; (4) ability to receive a fair trial, (5) the state's interest in having local controversies decided within its borders; (6) enforceability of any judgment rendered; and (7) the plaintiff's original choice of forum." In re Harwell, 381 B.R. 885, 892 (Bankr. D. Colo. 2008) (collecting cases). Still, "the analysis of the combination of the interests of justice and convenience of the parties is inherently factual and entails the exercise of discretion." In re Lebbos, 429 B.R. 154, 163 (E.D. Ca. 2010).

Many of the considerations relevant to the transfer question have already been discussed in the context of Plaintiffs' Motions, and the Court will not belabor the points already made, but adds the following observations.

The first three factors are given the greatest weight in the Section 1412 transfer analysis. See Perno v. Chrysler Group, LLC, 2011 WL 868899 at *4 (D.N.J. 2011) (collecting cases) ("Generally, courts have concluded that when civil actions are related to a pending bankruptcy proceeding, there is a presumption that the district where the bankruptcy case is pending is the proper venue"); In re Asset Resolution LLC, 2009 WL 4505944 at *3 (Bankr. S.D.N.Y. 2009) (collecting cases) ("courts have often given the most weight to the economic and efficient administration of the estate"). These factors all weigh heavily towards transfer to the Oklahoma bankruptcy court.

The claims against the Millennium Plan have come from diverse geographical locations and present complex issues for resolution. That diversity, however, has been lessened by the transfer of the Young, Westfall, and White cases to the Oklahoma Bankruptcy Court, and it makes sense to

transfer this case as well.  Such a transfer will allow this case to be conducted contemporaneously with the actions which have been transferred and present similar claims.  Though Plaintiffs do not seek the policies as a part of their claim for relief, their claims potentially impact the estate and Millennium's ability to draw against those policies to defend against the claims, and they effect a reorganization.  Additionally, present Plaintiffs have filed proof of claims in the bankruptcy proceedings and are interpleader defendants relating to the Millennium Plan, and those actions and claims are going to have to be resolved in Oklahoma, whether in the bankruptcy court or the district court.

Further, transfer should reduce the costs of discovery and pre-trial preparation because efforts will not need to be duplicated, thereby lessening scheduling conflicts and preserving estate assets.  Transfer will also help in reducing the possibility of inconsistent judicial rulings.

Turning to factors four through six, the Court is not convinced that Plaintiffs will not receive a fair trial if the case is transferred, and the Court has already noted that they have available avenues to secure a jury trial on their state law claims.  While Tennessee certainly has an interest in seeing that local controversies be decided in this state, this is more than a local controversy.   Moreover, Oklahoma has an interest because the Trustee, the administrator, and many participants are Oklahomans.  Most of Millennium's assets are located in Oklahoma, which weighs in favor of Oklahoma, as do the prospects for enforcing any judgment relating to Millennium's assets.

Finally, Plaintiffs' original choice of forum counsels against transfer, but this is lessened somewhat because Plaintiffs are already defendants in the Oklahoma interpleader actions and have filed proof of claims in the bankruptcy court.  In any event, the Court finds the choice of forum consideration insufficient to override the many reasons for transfer.

### III. **CONCLUSION**

On the basis of the foregoing, Plaintiffs' Motion to Remand and Abstain (Docket Entry No. 139) and Plaintiffs' Motion to Sever Claims Against the Millennium Plan (Docket No. 141) are denied. Aviva's Motion to Transfer Venue (Docket No. 136) is granted, and this case is transferred to the United States District Court for the Western District of Oklahoma for the purpose of referring the action to the United States Bankruptcy Court for the Western District of Oklahoma. Finally, the Court declines to rule on Plaintiffs' Motion for Voluntary Dismissal (Docket No. 164).

Todd Campbell
United States District Judge